# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# MOBILE DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, ) ) ) | |
| Plaintiff, ) ) ) | CIVIL ACTION NO. |
| v. ) ) ) ) | |
| CLIMATEMP COOLING & HEATING, INC. ) ) ) | JURY TRIAL DEMAND |
| Defendant. ) | |

## COMPLAINT

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. §2000e et seq., and Title I of the Civil Rights Act of 1991, 42 U.S.C. §1981a, to correct unlawful employment practices on the basis of sex (female), race (African-American), and retaliation, and to provide appropriate relief to Robert DeFrancesco, Beatrice "Diane" Taylor, a class of female employees, and a class of African-American job applicants who were adversely affected by such practices. As alleged with greater particularity in paragraphs eleven (11) through sixteen (16) below, Defendant Climatemp Cooling & Heating, Inc. ("Defendant") subjected a class of female employees to harassment because of sex at Defendant's Summerdale, Alabama location, refused to hire qualified African-American job applicants based on race, terminated Beatrice "Diane" Taylor based on her association with bi-racial individuals, and retaliated against Robert

DeFrancesco for opposing conduct made unlawful under Title VII. Additionally, Defendant has failed to post and keep posted on its premises notices setting forth information regarding Federal laws prohibiting job discrimination, as required by Title VII.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Sections 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Sections 2000e-5(f)(1) ("Title VII"), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the Mobile Division of the United States District Court for the Southern District of Alabama.

## PARTIES

3. Plaintiff, the Equal Employment Opportunity Commission (the "Commission"), is the agency of the United States of America charged with the administration, interpretation and enforcement of Title VII, and is expressly authorized to bring this action by Section 706(f)(1) and (3) of Title VII, 42 U.S.C. Section 2000e-5(f)(1) and (3).

4. At all relevant times, Defendant has continuously been an Alabama corporation doing business in Alabama, and has continuously had over 20 employees.

5. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

## ADMINISTRATIVE PROCEDURES

6. More than thirty days prior to the institution of this lawsuit, Robert DeFrancesco ("DeFrancesco") filed a charge with the Commission alleging violations of Title VII by Defendant.

7. On April 24, 2019, the Commission issued to Defendant a Letter of Determination finding reasonable cause to believe that Title VII was violated and inviting Defendant to join the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

8. In its efforts to conciliate, the Commission engaged in communications with Defendant to provide it with the opportunity to remedy the discriminatory practices described in the Letter of Determination. The Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

9. On June 14, 2019, the Commission issued to Defendant a Notice of Failure of Conciliation advising Defendant that the Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

10. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

## COUNT I -VIOLATIONS OF TITLE VII

11. From at least as early as March 18, 2017, and continuing to the present, Defendant has engaged in unlawful employment practices at its Summerdale, Alabama, location in violation of Sections 703(a) and 704(a) of Title VII, 42 U.S.C. § 2000e-2(a)(1) and 2000e-3(a).

12. Specifically, Defendant subjected a class of female employees to severe, pervasive, unwanted, degrading and offensive sexual conduct, based on their sex (female).

13. The unlawful sexual harassment, which was perpetrated by Defendant's owner, Randy Englebert ("Englebert"), included, but was not limited to, the following unwelcomed conduct that created a hostile work environment based on sex:

a) Englebert routinely called female employees "bitch," "stupid bitch," "stupid fucking bitch" and "ditzy." Englebert made comments that female employees were being "bitchy today."

b) Englebert stated that female employees only worked for him in order to "go under his desk" and "because they have pretty faces."

c) Englebert constantly made derogatory comments to female employees as being stupid or inferior because they were female.

d) Englebert told female employees, "You're not smart enough to do this job because you are a woman" and "men don't clean the bathrooms, women do that."

e) Englebert told female employees they were "stupid, dumb blondes."

f) Englebert harassed one female employee by undermining her work, contradicting what she told clients, slamming doors in her face, and locking the door she used to get to other offices so that she was trapped. Once, he told her she was being too nice and needed to be a "bitch."

g) Female employees reported constant tension in the workplace because they anticipated Englebert's daily harassment of them, which included episodes of Englebert being explosively angry.

h) Some female employees cried in the workplace and became physically sick driving to work because they knew they would be subjected to Englebert's pervasive harassment.

        i) Englebert did not treat male employees with the same harassment.

14. Additionally, Englebert terminated a Caucasian female employee, Beatrice "Diane" Taylor, shortly after making her show him photographs of her bi-racial grandchildren. Taylor was reluctant to show Englebert the photographs based on hearing Englebert making racially derogatory comments about African-Americans. Englebert told Taylor, "We don't need their kind here" and said her bi-racial grandchildren would have to use separate restrooms. Englebert unlawfully terminated Taylor based on her association with persons of a different race.

15. Defendant also subjected a class of qualified African-American job applicants to discriminatory practices by refusing to hire them. Defendant's intentional discrimination based on race was evidenced by Englebert frequently making racially derogatory comments in regard to never hiring African-American applicants including the following:

        a) Englebert instructed employees to write the race of African-American applicants on their job applications, including instructing some employees to write "big Black N****r" or initials representing that description.

        b) Englebert frequently made racially derogatory comments such as "no n****rs will ever work for this company" and "n****rs are lazy" and stated that he "would not hire a stupid n****r."

        c) Englebert refused to interview multiple qualified African-American job candidates. When an employee informed Englebert that an applicant was Black, Englebert replied, "You might as well throw that [application] away." Once, when an African-American female applied for a front desk job, Englebert commented to a Caucasian employee that "she won't be getting a job here; you saw what color she is."

        d) When training new Caucasian employees, Englebert commented, "You will have

5

shadows working with you today, and I don't mean n****rs."

    e)    Englebert told a Caucasian employee to notify him if an applicant was African-American because "Blacks are a waste of my time." When that employee confronted Englebert by saying, "It sounds like you are a racist," Englebert replied, "I shit you not."

    f)    Englebert has never hired any Black applicants and often hired less qualified Caucasian applicants instead. Between July 21, 2017 and November 27, 2017, Englebert hired fifteen (15) Caucasian technicians and no Black applicants, despite having five qualified Black candidates apply. One of the Black applicants during this period had been an HVAC technician for nearly ten years, including working as a foreman for an HVAC company and listing a personal reference who was a current Climatemp employee. Englebert hired a Caucasian candidate instead.

    g)    In July 2017, two qualified Black candidates applied for open technician jobs. Once Englebert learned they were Black, he refused to interview them and pawned off the interviews to DeFrancesco. DeFrancesco interviewed them and reported to Englebert that at least one of the applicants would work out well. Englebert responded that "no n*****s will ever work for this company." One of these applicants followed up several times regarding the status of his application, but was never hired. Shortly after these two Black applicants applied, a Caucasian applicant came in and was hired on the spot.

    16.    When DeFrancesco confronted Englebert regarding his sexual harassment of female employees, refusal to hire African-Americans, and use of racial epithets, Englebert immediately terminated him because he opposed that conduct. DeFrancesco told Englebert to "stop talking to female employees like they are dogs; you are making them cry," and criticized Englebert for using the "n" word and refusing to hire two qualified African-American candidates whom DeFrancesco interviewed. Englebert responded that he could speak to his employees however he

wanted, told DeFrancesco he was "done," and instructed him to take off his uniform.

17. The effect of the practices complained of in paragraphs eleven (11) through sixteen (16) above has been to deprive a class of female employees and African-American job applicants equal employment opportunities and otherwise to adversely affect their status as employees and applicants because of their sex (female) or race (African-American).

18. Defendant unlawfully retaliated against DeFrancesco for opposing the conduct complained of in paragraphs eleven (11) through sixteen (16) above by terminating his employment.

19. Defendant unlawfully terminated Beatrice "Diane" Taylor based on her association with her grandchildren of a different (mixed) race as complained of in paragraph fourteen (14).

20. The unlawful employment practices complained of in paragraphs eleven (11) through thirteen (13) above subjected a class of female employees to a hostile work environment based on their sex (female).

21. The unlawful employment practices complained of in paragraphs eleven (11) through sixteen (16) above were intentional.

22. The unlawful employment practices complained of in paragraphs eleven (11) through sixteen (16) above were done with malice or with reckless indifference to the federally protected rights of a class of female employees, a class of African-American job applicants, Taylor, and DeFrancesco.

## COUNT II -RECORD KEEPING VIOLATION

23. Since at least December 27, 2017, Defendant has failed, in violation of Section 711 of Title VII, 42 U.S.C.§ 2000e-10, to post and keep posted in conspicuous places upon its premises where notices to employees and applicants for employment are customarily posted, a notice

7

prepared or approved by the Equal Employment Opportunity Commission setting forth information regarding Federal laws prohibiting job discrimination based on race, color, sex, national origin, religion, and disability.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from engaging in sexual harassment, and any other employment practices which discriminate on the basis of sex or race.

B. Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from discriminating against job applicants on the basis of race.

C. Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from retaliating against employees who oppose conduct made unlawful under Title VII.

D. Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from discriminating against employees on the basis of their association with persons of a different race.

E. Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for women, African-Americans, and for

persons who oppose conduct prohibited by Title VII, and which eradicate the effects of its past and present unlawful employment practices.

F.  Order Defendant to make whole DeFrancesco, Taylor, and the class of female employees and class of African-American job candidates, by providing, as appropriate, back pay, reinstatement or in the alternative front pay, and compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of in paragraphs eleven (11) through sixteen (16) above, including emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

G.  Order Defendant to pay to DeFrancesco, Taylor, and the class of female employees and class of African-American job candidates punitive damages for its malicious and reckless conduct described in paragraphs eleven (11) through sixteen (16) above, in amounts to be determined at trial.

H.  Grant such further relief as the Court deems necessary and proper in the public interest.

I.  Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its Complaint.

RESPECTFULLY SUBMITTED,

James L. Lee
Deputy General Counsel

Gwendolyn Young Reams
Associate General Counsel

U.S. Equal Employment Opportunity Commission
131 M. Street E
Washington, DC 20507

_____
MARSHA RUCKER (PA Bar No. 90041)
Regional Attorney

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
Birmingham District Office
Ridge Park Place, Suite 2000
1130 22nd Street, South
Birmingham, Alabama 35205
Telephone: (205) 212-2044
Facsimile: (205) 212-2041